UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTIONNE LAMAR SHULER,

    Petitioner,

v.                                             CASE NO: 8:12-cv-126-T-30TGW

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

    Respondents.
_____/

# ORDER

Antionne Shuler (hereinafter "Petitioner or "Shuler"), an inmate in the Florida penal system proceeding *pro se*, brings this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. 1). Shuler is challenging his conviction for lewd and lascivious battery. (Dkt. 1). The Court has considered the petition, Respondents' response (Dkt. 7), and Shuler's reply (Dkt. 12). Upon review, the Court determines that the petition must be denied because the claims of ineffective assistance of counsel are without merit.

## BACKGROUND

On November 1, 2007, Shuler was found guilty by a jury of one count of lewd and lascivious battery. (Dkt. 1). Shuler was sentenced to the statutory minimum of twenty years in prison followed by ten years of sex offender probation. (Dkt. 1). Shuler appealed. It was denied without written opinion. *Shuler v. State*, 3 So. 3d 330 (Fla. 2d DCA 2009).

Shuler then filed a Rule 3.850 motion for post-conviction relief claiming his attorney was ineffective for failing to object to (1) hearsay evidence of two witnesses, Michael James and Jason Williams; and (2) improper comments made by the prosecutors during closing arguments. (Appendix, Exh. 7). Following an evidentiary hearing, the state court denied the Petitioner's motion for post-conviction relief. Shuler appealed. The state appellate court affirmed the conviction per curium without written opinion. (Westlaw cite unavailable *see* Dkt. 1, Exh. D.) Petitioner then filed a timely petition for writ of habeas corpus with this Court under 28 U.S.C. § 2254 raising the same grounds he raised in his post-conviction motion. (Dkt. 1)

## **STANDARD OF REVIEW**

Because the Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1214 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693; *see also Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (habeas court's standard for evaluating state-court ruling is highly deferential, which demands that state court decisions be given the benefit of the doubt).

According to 28 U.S.C. § 2254(a) "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgement of a State

court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims. *See Penry v. Johnson*, 532 U.S. at 792; *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003).

Pursuant to AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in a state court unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. §2254(d); *Prince v. Vincent*, 538 U.S.C. 634, 638-639 (2003); *Clark v. Crosby*, 335 F.3d 1303, 1308 (11th Cir. 2003); *Harrell v. Butterworth*, 251 F. 3d 926, 930 (11th Cir. 2001). When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state adjudicated the claim on the merits. *Harrignton v. Richter*, 131 S.Ct. 770, 784-85 (2011). Even where a state court denies an application for post-conviction relief without written opinion, in this circuit that decision is entitled to the same deference as if the state court had entered written findings to support its decision. *See Wright v. Sec. Dept. of Corrs.*, 278 F.3d 1245, 1255 (11th Cir. 2002). In

addition, this court must presume that the state's factual findings were correct, and the Petitioner "shall have the burden of rebutting the findings by clear and convincing evidence." 28 U.S.C. 2254(e)(1); *Henderson*, 353 F.3d at 890-91.

## **INEFFECTIVE ASSISTANCE OF COUNSEL**

The standard to determine whether the right to effective assistance of counsel has been violated is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984). Counsel is presumed competent to assist a defendant; the burden is on the petitioner to demonstrate the denial of the effective assistance of counsel. *United States v. Cronic*, 466 U.S. 648, 658 (1984). To vacate the conviction, the petitioner must show "by a preponderance of competent evidence," *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000), that (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) Defendant was prejudiced by the deficient performance. *Strickland*, 466 U.S. 668 at 687, 694.

To satisfy the prejudice prong under *Strickland*, the accused must establish that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "

## **DISCUSSION**

Petitioner asserts two claims of ineffective assistance of counsel in his petition. The Petitioner claims his counsel was ineffective because his attorney failed to object to (1) the

hearsay evidence of two witness, Michael James and Jason Williams; and (2) improper comments made by the prosecutor during closing arguments.

**Ground One:** **Ineffective assistance of counsel for failing to object to the testimony of Michael James and Jason Williams.**

Shuler contends that his attorney should have objected to the testimony of both witnesses as hearsay when they testified that (1)Shuler told them he had engaged in sexual conduct with the victim; and (2) the victim told them she had engaged in sexual conduct with Shuler. This contention is without merit.

First, the witnesses' testimony about Shuler's statements fall within one of the well-defined exceptions to the hearsay rule under Florida law. Hearsay is admissible when it is "[a] statement that is offered against the party and is the party's own statement in either an individual or representative capacity[.]" Fla. Stat. § 90.803(18)(a). But Shuler contends his attorney still should have objected to the statements because they are "hearsay in the ultimate sense." This argument has no merit. "Trial counsel [cannot] be deemed ineffective for failing to raise a futile hearsay objection." *Hamner v. Deputy Sec'y of Florida Dept. of Corr.*, 438 F. App'x 875, 880 (11th Cir. 2011) (citing *Card v. Dugger,* 911 F.2d 1494, 1520 (11th Cir.1990) ( "Counsel cannot be labeled ineffective for failing to raise issues which have no merit.")). Therefore, Petitioner fails to show that trial counsel's performance was deficient for failing to object to the statements from Michael James and Jason Williams pertaining to the Petitioner's own statements.

Second, Shuler argues counsel was ineffective because he failed to object to the testimony of Michael Williams and Jason Williams pertaining to their conversations with the victim. Under Florida law "there is no question that evidence of the prior consistent statements of a witness is inadmissible because it is an impermissible-and probably hearsay-attempt to bolster the credibility of trial testimony." *Reyes v. State*, 580 So. 2d 309, 310 (Fla. Dist. Ct. App. 1991) (citing *Van Gallon v. State,* 50 So.2d 882 (Fla.1951); *Custer v. State,* 159 Fla. 574, 34 So.2d 100 (1947); *Perez v. State,* 371 So.2d 714 (Fla. 2d DCA 1979). See generally *Kopko v. State,* 577 So.2d 956, 960 n. 9 (Fla. 5th DCA 1991)). However, the statements offered as testimony were believed by counsel to be inconsistent statements of the victim which he allowed to come in to discredit the victim's testimony[1]. The state post-conviction court, after holding a hearing on Shuler's claims, stated:

> [counsel] testified that he had strategic reasons for not objecting to such hearsay statements. Specifically, counsel testified that his strategy was to point out the inconsistencies between each accounting because "everybody had a different version of the events, that's how I was challenging the accusation itself." [Counsel] testified that his strategy was to discredit the testimony because it "was so outlandish and ridiculous that it lacked credibility." It is well settled that reasonable strategic or tactical decisions by counsel 'do not justify post conviction relief' and should not be second guessed. Morever counsel's performance should be given 'great deference' in light of the strong presumption that such performance was not ineffective. In the instant action, a review of the trial testimonies of James and Williams does reveal inconsistencies (i.e whether the victim was "lured" onto the back porch while taking out the trash or came to the Defendants home voluntarily, and whether the sex occurred on the porch or in some "back room" of the house. Accordingly, and finding that trial counsel's decision not to object to the hearsay included in the testimonies of James and Williams was a reasonable

---

[1] Prior inconsistent statements are admissible as impeachment. *Fitzpatrick v. State*, 900 So. 2d 495, 515 (Fla. 2005). Either party may offer impeachment. *Id.* An objection would have been overruled.

strategic one, the Court denies the Defendant's claims for relief under Ground One. (Dkt. 1, Exh. C, pp. 3-4).

This Court's role is to evaluate whether the state post-conviction court adjudicated the claim by making a determination that is contrary to or an unreasonable application of federal law, or was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d). It is Shuler's burden to show by clear and convincing evidence that the facts found by the state court are incorrect. 28 U.S.C. § 2254 (e)(1). He has not done so.

The state court found that Shuler's counsel did not object to the hearsay testimony because it was part of his trial strategy. Shuler fails to show any evidence that this factual determination was unreasonable, and therefore this Court is bound by it. Next, the Court turns to whether the state post-conviction court applied the *Strickland* standard in a reasonable manner. The state post-conviction court correctly stated there is a strong presumption that counsel's decision is an exercise of professional judgement. *See Strickland*, 466 U.S. at 690.

Therefore, Shuler's claim in ground one is denied.

**Ground Two:** **Ineffective assistance of counsel for failing to object to comments made by the Prosecutor during closing arguments.**

Shuler claims his attorney should have objected to the statements made by the prosecutors in closing arguments. The state post-conviction court found that counsel likely should have objected to some of the statements of the prosecutor, but found Shuler was not prejudiced because the statements were not so egregious that it denied Shuler his due process right to a fair trial.

Shuler claims two types of improper comments were made by the prosecutors: (1) reference to non-record evidence; and (2) statements of personal opinion and appeals to the jurors' fears and emotions.

Shuler first argues the following statements pertaining to evidence outside of the record were improper:

> He was lucky that she didn't run and tell anybody when there was still time to get physical evidence, to do an exam on her, to look for semen on the carpet. He was lucky that she didn't go and do that. Because there was no opportunity to look for those things. He was lucky that she waited so long that it was six months before he was arrested. And he was lucky that she kept that secret so when he went around telling his secret to people, nothing was done, because she was keeping it inside. (Appendix, Exh. 17, pp. 402).

> And what about the physical evidence that could be on the carpet or could not be on the carpet. Who knows who walks through there, how many times the carpet has been cleaned, if things had been spilled on the carpet. Remember, this is a long time after. Let's say that they've gone over it with a light and there was nothing there, would it make your decision easier or harder? No, it wouldn't (Appendix, Exh. 17, pp. 410).

> Don't punish the police in this case, or the state in this case, for the work that you think should have been done. That's not your job as a juror. Your job is to evaluate whether or not you think this happened, after you have listened to the evidence in this case. *Id.*

The state post-conviction court addressed Shuler's first claim as follows:

> [Shuler] alleges that because the State "had no physical evidence in this case" it "made reference to non-record evidence by implying that more evidence existed than was offered at trial." A review of the state's closing argument, however, indicates that the prosecutor does *not* imply the physical evidence existed-only that it may or may not have. (Dkt. 1, Exh. C, pp. 4) (emphasis in original).

The state post-conviction court's decision is not an unreasonable application of federal law. Shuler's counsel argued the police did a poor job in collecting evidence -- they had not inspected the carpet, for example. The prosecutor countered by arguing the delay of six months in the crime coming to light could have affected the ability of the police to find any evidence. A prosecutor may respond to defense counsel's arguments on a subject. *See United States v. Young*, 470 U.S. 1, 11 (1985). This is often referred to as an invited response. *Id.* Furthermore, to determine if the statements amount to prosecutorial misconduct "it can make a difference if the improper argument was preceded by remarks of defense counsel which invited it." *Romine v. Head*, 253 F.3d 1349, 1369 (11th Cir. 2001) (citing *Darden v. Wainwright,* 477 U.S. 168, 179).

Shuler's remaining arguments involve claims that the prosecutor's statements appealed to the jurors' emotions and fears, and include the prosecutor's personal opinion.

Shuler first argues a prosecutor spoke about her opinion about prior bad acts by Shuler, rendering the trial unfair. In support Shuler points to the following statements:

> And out of the blue? Well, it might seem like that, if we didn't also know about this weird phone conversation, where Antionne Shuler is on the phone with - at the time 15-year old Barbie, and he is trying to facilitate a meeting for Michael James to have - also 15 to have sex with Barbie, 15. So doesn't that seem reasonable? He's standing outside the house, and he says, hey, you go in the house and you can have sex with Barbie and I'll try to distract Vanishya. Well, yeah, that does seem kind out of the blue. But now we know this phone conversation you see that this is a pattern. He's constantly trying to get Michael James to have sex with his girlfriend, whether he enjoys that, I don't know. But doesn't that bother you? He's 21 year's old, and he's trying to help - or to encourage a 15-year-old girl to have sex with her 15-year old boyfriend. That is inappropriate. It bothers me. And doesn't the fact that he looked at a

15-year-old and thought of her as being able to have sex and thought she should be having sex. (Appendix, Exh. 17, pp. 412-13).

Shuler also contends other statements made by the prosecutors were permeated with comments of personal opinion or aimed at the emotions and fears of the jury. Shuler claims the totality of the following statements amount to a "golden rule[2]" type of argument and therefore are prejudicial:

> You heard from Tiwanda Jones... I think she really she really cared for Mr. Shuler, she liked him, he was in the house all the time, he was someone that was welcome in their home, he was someone that played cards with both she and her mother, and knew the family. He lived right next door. This was not some shadowy figure at a playground that you have to watch out for, you have to be guarded against. This is the neighbor, the guy that you know. A little bit different, isn't it? You don't have expectations about someone you care about doing something like this. I'm sure she didn't. (Appendix, Exh. 17, Vol. III, pp. 355).

> [S]he doesn't know anything about sex, she has no idea, she's a child. And isn't that one of the reasons there is a statute like this?... Children don't have the judgement to make those decisions. Children can't vote. Children can't drive cars. Children can't go in the military when they are 12 years old. And they shouldn't right? Because they're kids. And they can't make decisions like this that can have a huge impact. Legally they can't. And grown men are required to stay away from them. Right? You're 21, you stay away from 12 year olds. *Id.* at 367.

> And what did she do when Mr. Quisberry asked her about what happened that day, she froze. I saw it, my stomach dropped. She couldn't say it, it took her a while to get that out. Now, she didn't break down crying, she wasn't shaking

---

[2] A "golden rule" type argument which "asks the jurors to place themselves in the position of a party "is universally condemned because it encourages the jury to 'depart from neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence.' " *United States v. Palma*, 473 F.3d 899, 902 (8th Cir. 2007) (citation omitted).

when she said it, but she took a moment to get herself together, to get her resolve, to say what she needed to say. I thought the pause was extremely powerful what she did. *Id.* at 403.

And I know that it was not easy to understand her all of the time when she was up there testifying, but think about the circumstances she was testifying in. She is talking about the most difficult horrible thing that happened to her, and she's telling a room full of strangers, in a courtroom, with a Judge and with people in suits, completely out of her element. She's speaking into a microphone. It was scary. Not only did she have to undergo the humiliation of that man pulling down her underwear, and forcing himself upon her, not only did she have to face that humiliation - and then bragging about it to people that she knows, to her youth's pastor, to her aunt's boyfriend - not only does she have to face these humiliations, but how humiliating do you think it was for her to come up here and say what had happened and talk about that sexual experience. *Id.* at 404.

She's buried that secret deep inside, and it ate her up. And she didn't come forward and say, poor me, poor me, I'm 12, and he forced me to have sex. That's not how it came out. It came out because he told people he did it, and then she was confronted. Who knows what would have happened if he had not told people what he did. Who knows. *Id.* at 406.

Antionne Shuler didn't just violate Vanishya Jones for 10 or 20 minutes, or however long it was that day, he violated her for good. He took something from her she can never get back. He took her virginity, he took her dignity, he took a piece of her lighthearted childhood, and he replaced those things with shame, with dirtiness, with anger, and maybe some emotions that we can't even fathom. *Id.* at 415.

The state post-conviction court addressed Shuler's contentions as follows:

As to the remaining claims as the state pointed out at the evidentiary hearing, the jury was properly instructed that closing arguments are not evidence, which should negate the impact of the prosecutor's expressed opinion. Furthermore, although trial counsel Eger opined that he "probably should have"" objected to the prosecutor's closing summation, he also admitted that whether to object during closing argument is a strategic decision, and he tries not to object frequently during closing arguments. The Court agrees that defense counsel should have objected to some of the prosecutor's summation statements;

however, upon review of the closing arguments in their entirety, the Court also finds that such comments were not so pervasive as to undermine confidence in the outcome of this case. Thus, the Defendant has not satisfied the necessary *Strickland* prejudice prong. A defense counsel's failure to object to improper closing arguments by the state is not ineffective without prejudice. This claim is therefore denied. In addition to the victim's testimony, a total of three witnesses (Michael James, Jarvis Wright, and Jason Williams) testified that the Defendant admitted to them that he had sex with he 12-year-old-victim. Based on the foregoing, the Court's confidence in the outcome of the proceeding is not undermined by any of the defendant's claims. (Dkt. 1, Exh. C, pp. 4-5)

The state post-conviction court did not apply federal law in an unreasonable manner. To determine if counsel's failure to object to statements made by the prosecutors was substantial enough error to render the trial unfair, it is necessary to determine if the prosecutors committed misconduct. Under federal law, a prosecutor's statements to rise to the level of misconduct, "a two-pronged test must be met: (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." *United States v. Eyster*, 948 F.2d 1196, 1206 (11th Cir. 1991).

The state trial court held some of the statements were improper, so Shuler's argument is limited to whether the state was unreasonable in finding that the statements by the prosecutors were not prejudicial. To determine if the statements rise to a level of such egregiousness they violate due process, this Court must consider six factors: "(1) whether the remarks were isolated, ambiguous or unintentional; (2) whether there was a contemporaneous objection by defense counsel; (3) the trial courts instructions; (4) the weight of aggravating and mitigating factors", *Land v. Allen*, 573 F.3d 1211, 1219, "[(5)] the degree to which the challenged remarks have a tendency to mislead the jury and prejudice the accused"; and "[(6)]

the strength of the competent proof to establish the guilt of the accused." *Davis v. Zant*, 36 F.3d 1538, 1546.

The state found that Shuler was not prejudiced by the comments even though some were improper because (1) "the jury was properly instructed that the closing arguments are not evidence"; (2) the decision not to object was at least somewhat a strategic decision by counsel; and (3) three witnesses testified that Shuler admitted to having sex with the twelve year old victim. That decision did not unreasonably apply federal law. Therefore, Shuler's claim under ground two is denied.

It is therefore ORDERED AND ADJUDGED that:

1. The petition for writ of habeas corpus (Dkt. #1) is DENIED.

2. The Clerk is directed to enter judgment in favor of Respondents and against the Petitioner, terminate any pending motions, and close this file.

### CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the

district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE** and **ORDERED** in Tampa, Florida on June 20, 2012.

_____
JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel/Parties of Record

F:\Docs\2012\12-cv-126.deny 2254.wpd